UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TARA M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO. C18-634-JPD <br><br> ORDER AFFIRMING THE COMMISSIONER |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision be AFFIRMED.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty-six year old woman with a tenth grade education. Administrative Record ("AR") at 51-52. Her past work experience includes employment as a cashier at numerous stores, a Mary Kay cosmetics salesperson, a Starbucks barista, and pizza truck worker. AR at 52-54, 54, 203. At the time of the

ORDER - 1

administrative hearing, plaintiff was still working part-time in a pizza truck cooking pizzas and working as the cashier. AR at 52, 61.

On June 3, 2013, she filed an application for DIB, alleging an onset date of November 1, 2012. AR at 14, 176-77. Plaintiff asserts that she is disabled due to fibromyalgia, edema, cellulitis, depression, anxiety, post-traumatic stress disorder (PTSD), and irritable bowel syndrome (IBS). AR at 49.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 14. Plaintiff requested a hearing, which took place on February 12, 2015. AR at 44-76. On March 2, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work as a cashier or fast food worker. AR at 11-26. Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 7, 2018, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

IV. EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education,

and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On March 2, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since November 1, 2012, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia; hip bursitis; opioid dependence; major depressive disorder; generalized anxiety disorder; and panic disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional exposure to hazardous working conditions such as proximity to unprotected heights and moving machinery; she is able to adapt to a predictable work routine with no more than occasional changes in processes and procedures; and she is limited to casual or superficial public interaction at least 90% of the time.

6. The claimant is capable of performing past relevant work as a fast food worker DOT#311.472-010, light, SVP 2 and cashier checker, DOT#211.462-014, light, SVP 3. This work does not require the

performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2012, through the date of this decision.

AR at 16-25.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's testimony?

2. Did the ALJ err in evaluating the medical opinion evidence?

3. Did the ALJ err in evaluating the lay opinion of plaintiff's current boss and friend, Ms. Carner?

Dkt. 10 at 1; Dkt. 11 at 1.

## VII. DISCUSSION

A. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

   *1. Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v.*

*Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[2] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR at 20. First, the ALJ found that (1) plaintiff failed to follow treatment recommendations; (2) her impairments are adequately controlled by

---

[2] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. This change was effective March 28, 2016 and is therefore not applicable to the March 2, 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

medications; (3) plaintiff's statements to providers reflected secondary gain motivation; and (4) her testimony regarding her symptoms was inconsistent with objective medical evidence. AR at 21-22.

### *(i)  Failure to Comply with Treatment Recommendations*

The ALJ found that plaintiff failed to follow-through with both physical therapy and with mental health treatment, although such treatment was recommended by her medical providers. AR at 20-22. The ALJ may consider a failure to follow treatment recommendations, unless that failure is attributed to the claimant's mental impairments. *Molina*, 674 F.3d at 1113-14.

The ALJ did not err by finding that plaintiff's lack of compliance with treatment undermines her testimony. In 2013, a physical therapist said that plaintiff had improved some with treatment and was no longer having pain with certain movements of her neck and hips. AR at 353. However, plaintiff stopped attending physical therapy, and was subsequently discharged due to this failure to attend her scheduled appointments in March 2014. AR at 430. Plaintiff returned, but was discharged for failing to attend again in May, only two months later. AR at 428. With respect to plaintiff's mental health, plaintiff said that she was not willing to attend counseling. AR at 544. After staff inquired into what prevented plaintiff from attending, plaintiff was scheduled for counseling but then failed to attend those appointments as well. AR at 464, 466. Plaintiff also stated that she stopped taking psychiatric medication because she did not like it. AR at 415. When the ALJ questioned plaintiff about her failure to attend appointments during the hearing, plaintiff testified that she simply forgot her counseling appointments. However, the ALJ was not required to believe this claim, as there was no evidence in the record that plaintiff had a severe degree of memory impairment.

Accordingly, the ALJ did not err by finding that plaintiff's lack of compliance with treatment recommendations, including physical therapy and mental health treatment, undermines

her testimony. AR at 20-21. This was a clear and convincing reason, supported by substantial evidence, for giving plaintiff's testimony less weight.

### *(ii)* *Impairments Effectively Controlled by Medications are Not Disabling*

The ALJ also found that plaintiff's testimony was entitled to less weight because the evidence of record suggested that when plaintiff was compliant with treatment, it was effective in helping to alleviate plaintiff's physical and mental impairments. "Impairments that can be controlled effectively with medication are not disabling…." *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

With respect to plaintiff's pain, the ALJ noted that this improved with medication and injections. AR at 21. In January 2013, Dr. Stepan said plaintiff's fibromyalgia was stable. AR at 517. On May 2013, Dr. Stepan said her fibromyalgia was improving, and was better with medications. AR at 544. With respect to plaintiff's mental health, plaintiff told healthcare providers that medications helped her depression. AR at 321-22. Indeed, plaintiff testified at the hearing that her depression medications helped. AR at 55.

Accordingly, the ALJ could reasonably find that when plaintiff was compliant with treatment, it helped alleviate her pain from fibromyalgia as well as her mental health symptoms. The effectiveness of plaintiff's medications was a clear and convincing reason, supported by substantial evidence, for the ALJ to give plaintiff's testimony less weight.

### *(iii)* *Inconsistent with Daily Activities*

Plaintiff found that plaintiff's testimony about her limitations was entitled to less weight because it was inconsistent with her daily activities. AR at 22. Specifically, the ALJ found that although plaintiff testified that she was largely bed-bound by her fatigue, swelling, and pain, AR at 57-58, on other occasions plaintiff admitted to a much greater level of activity including getting her kids ready for school and making them breakfast. AR at 418-19. She did

various household chores, and spent a few hours each day on the phone or texting to sell Mary Kay cosmetics. AR at 418. In September 2013, she noted that she was active at her gym. AR at 405-07. She continued working part-time for the pizza truck even at the time of the administrative hearing, initially doing prep work but also interacting with customers as a cashier. AR at 460. Accordingly, the ALJ did not err by finding that plaintiff's daily activities were inconsistent with her testimony at the hearing regarding the severity of her limitations.

*(iv)    Secondary Gain Motivation*

The ALJ also found that plaintiff's statements to providers reflected a secondary gain motivation for applying for disability. AR at 22. As the ALJ noted, plaintiff said that she wanted to apply for disability in order to be available to her children while they were young, and then return to the workforce in the future. AR at 454, 471. Plaintiff also discussed being available for her children because their father was incarcerated. AR at 471. Later in 2014, plaintiff said she was seeking a psychiatric evaluation with her treating provider because she was advised to get one for her disability application. AR at 458.

The ALJ could reasonably conclude, based on this evidence, that plaintiff appeared to have some secondary gain motive. This was a clear and convincing reason, supported by substantial evidence, for the ALJ to find plaintiff less than fully credible.

*(v)    Inconsistency with Objective Medical Evidence*

Finally, the ALJ found that plaintiff's allegations are inconsistent with the objective medical evidence, as plaintiff's "pain complaints exceed objective findings. Physical exams consistently show full strength and normal gait. Despite reports of increased pain and hand swelling in April 2013, the claimant had normal strength bilaterally in the upper and lower extremities." AR at 21. The ALJ could not rely upon a lack of objective evidence, without more, to reject plaintiff's testimony regarding the severity of her pain and symptoms from her

ORDER - 10

fibromyalgia. It is well established that fibromyalgia pain eludes such measurement. However, in this case the ALJ properly considered the objective evidence among several other valid factors in weighing plaintiff's testimony, which was not improper. AR at 21.

Accordingly, the ALJ provided several clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's testimony in this case. Plaintiff has not established any harmful error in the ALJ's evaluation of plaintiff's testimony.

B. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

    2.  *Dr. Stepan*

Crenguta Stepan, M.D., treated plaintiff throughout the period under consideration. AR at 279, 553. Plaintiff testified that Dr. Stepan treated her for fibromyalgia, asthma, pain and depression. AR at 55. Dr. Stepan also completed paperwork for WorkFirst in January 2017. AR at 423. Dr. Stepan noted that plaintiff had fibromyalgia, bursitis of the hip, and depression which resulted in widespread chronic pain and fatigue. AR at 423. Dr. Stepan assessed plaintiff as limited to no sitting or standing for more than 30 minutes due to her fibromyalgia. AR at 423. Dr. Stepan also felt that plaintiff would not be able to concentrate

for long periods of time due to her fatigue and medications. AR at 423. Dr. Stepan felt that paintiff would be limited to 11-20 hours of light work activity per week. AR at 423-424.

The ALJ gave this opinion little weight as Dr. Stepan was content to only treat plaintiff's fibromyalgia with long-term opioids (rather than exploring other treatment options) and had noted improvement in plaintiff's symptoms with medication as well as "overall stability." AR at 23. In addition, the ALJ noted that "as discussed, exams show mostly full strength and normal gait." AR at 23. The ALJ did not err by questioning Dr. Stepan's opinion in light of the doctor's own examination findings, which reflected both improvement and stability. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ cited to Exhibit 13F/6, as a specific example, where plaintiff reported that her pain had improved with oxycodone. AR at 517.

The ALJ also questioned Dr. Stepan's opinions in light of the examination findings throughout the record, because "as discussed, exams show mostly full strength and normal gait." AR at 23. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (internal quotation marks omitted). Indeed, in April 2013, plaintiff had normal strength in her arms and legs. AR at 347-48. She did not have any synovitis, *i.e.*, swelling of the joints. AR at 348. Later examinations in 2013 showed that plaintiff continued to walk with a normal gait and that she generally did not have edema. AR at 395-96, 405-11, 522, 544-45. *But see* AR at 517 (noting some edema). While plaintiff had cellulitis (a skin infection) on her leg in December 2013, this infection soon improved. AR at 522. The ALJ could find that these benign objective findings tended to undermine Dr. Stepan's opinion that plaintiff had not only severe chronic pain, but significant edema in her legs that rendered her unable to sit or stand for long periods of time. Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving Dr. Stepan's opinion little weight. AR at 23.

### 3. *Dr. Anderson*

Kathleen Andersen, M.D., performed a psychological evaluation of plaintiff in October 2013. AR at 415-21. Dr. Andersen interviewed plaintiff, reviewed some treatment notes, and performed a mental status examination. AR at 415-20. Dr. Andersen diagnosed plaintiff with a major depressive disorder, generalized anxiety disorder, and a panic disorder. AR at 420. Dr. Andersen felt that plaintiff would have marked difficulty concentrating on tasks and completing tasks in a timely fashion due to her emotional lability, high level of anxiety, low energy, and pain. AR at 421. Dr. Andersen also felt that plaintiff would handle the additional stresses and unforeseen problems of a workplace poorly. AR at 421. Finally, Dr. Andersen felt that plaintiff would have marked difficulty interacting consistently with others related to her irritability, impatience, and anxiety. AR at 421.

The ALJ considered Dr. Andersen's opinion but gave it little weight. AR at 23. The ALJ found that the opinion was inconsistent with the mental status examinations and medical evidence of record, and with plaintiff's demonstrated ability to interact with the public as a cashier at her part time job at the pizza truck. AR at 23.

With respect to the ALJ's finding that Dr. Andersen's opinion was "inconsistent with mental status exams and the medical evidence of record," AR at 23, the ALJ addressed this issue in greater detail earlier in the decision, writing that "[d]espite allegations of disabling depression and anxiety, mental status exams are mostly within normal limits." AR at 22. The ALJ cited to examinations showing that plaintiff improved on the medication Effexor and that she behaved largely normally on mental status examinations. AR at 321-22. In another mental status examination, plaintiff was calm, polite, and cooperative, with logical thoughts. AR at 460. The ALJ could reasonably find that these examination findings were inconsistent with the "marked" difficulties suggested by Dr. Andersen. *See also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

ORDER - 14

595, 601 (9th Cir. 1999) (noting among other points that the claimant was engaging and cooperative in treatment visits).

The ALJ also questioned Dr. Andersen's opinion given plaintiff's daily activities. The ALJ may reasonably question a doctor's description of marked mental limitations given the claimant's daily activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). As the ALJ explained, "[t]he claimant's [ability] to work with the public in her part-time job is inconsistent with Dr. Andersen's opinion of functioning." AR at 23. Indeed, Dr. Andersen said that plaintiff would have marked difficulties interacting with the public, supervisors, and even coworkers due to "irritability, impatience, anxiety." AR at 421. The ALJ could reasonably discredit this opinion in light of plaintiff's demonstrated ability to work with the public and with some coworkers in a pizza truck. AR at 61-62, 460. Under these circumstances, the ALJ did not err by giving weight to the opinions of the State agency non-examining psychologists, who opined that plaintiff could work with normal breaks and limited public interaction. AR at 24. Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Andersen's opinion. AR at 23.

### C. The ALJ Did Not Err in Evaluating the Other Source Testimony

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater

percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Ms. Stephanie Carner was one of plaintiff's friends. She ran a pizza restaurant and hired plaintiff on a part-time basis. In April 2014, Ms. Carner submitted a letter describing plaintiff's performance. AR at 273-74. Ms. Carner noted that plaintiff was given a flexible schedule (2-3 hours a day, 3 days a week) that allowed her to perform her duties when she felt able. AR at 273-74. She submitted a second letter in February 2015. AR at 275. According to Ms. Carner, by that time plaintiff was scheduled to work 15-18 hours a week, but was rarely able to work all of her hours. AR at 275. She stated that plaintiff took frequent breaks on a daily basis, and often called into work sick or left early. AR at 275. She stated that plaintiff made mistakes and was forgetful in response to her pain and exhaustion. AR at 275.

The ALJ gave little weight to Ms. Carner's statement. AR at 23. Information from individuals such as Ms. Carner "provides an important source of information about [an individual's] impairments." *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). Such sources are able to report their independent observations of an individual's functioning. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition."). However, an ALJ may reject a lay witness's testimony only upon giving a reason germane to

that witness." *Ghanim*, 763 F.3d at 1165 (*quoting Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)).

Here, the ALJ reasonably gave Ms. Carner's statements little weight. AR at 23. As the ALJ observed, Ms. Carner had admitted in her first letter that she rarely saw the plaintiff, which tended to undermine her claim that plaintiff had a hard time taking care of herself. AR at 23. As for Ms. Carner's second letter, the ALJ noted that despite the description of plaintiff making significant mistakes at work, other evidence showed that plaintiff had been entrusted with additional responsibilities. AR at 23. Specifically, the ALJ noted that plaintiff was eventually moved from being a prep cook (rolling dough balls and cutting vegetables) to working as the cashier and interacting with the public to take orders, wait on customers, and use the cash register 15 to 18 hours per week. AR at 23, 61-62. The ALJ also noted that plaintiff was working 15-18 hours per week, which "supports a higher level of functioning than alleged" in Ms. Carner's letter. AR at 23, 274.

Accordingly, the ALJ provided several germane reasons for Ms. Carner's statements regarding plaintiff's functioning were entitled to limited weight. The ALJ could reasonably conclude that Ms. Carner's description of the severity of plaintiff's limitations, while she was simultaneously giving plaintiff greater responsibility at work that involved interacting with customers, was less than fully credible. AR at 21.

## VIII. CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision be AFFIRMED. The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

ORDER - 17

*Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

DATED this 28th day of February, 2019.

_James P. Donohue_
JAMES P. DONOHUE
United States Magistrate Judge